UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

ROBERT ANDREW PANNIER,

Petitioner,

v.

STATE OF MINNESOTA,

Respondent.

Civil File No. 00-983 (PAM/FLN)

**REPORT AND RECOMMENDATION**

Robert Andrew Pannier, Petitioner, pro se.

Thomas J. Harbinson, County Attorney, and Thomas W. Haines, Assistant County Attorney, Scott County, Minnesota, for Respondent.

---

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254. (Docket No. 1.) Respondent has filed a return contending that the petition should be denied. (Docket Nos. 6 and 7.) The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it is recommended that the petition for writ of habeas corpus be denied and that this action be dismissed with prejudice.

## I. BACKGROUND

Petitioner is challenging his 1998 state court convictions for first degree criminal sexual conduct and third degree criminal sexual conduct. His convictions stem from an incident that occurred on January 23, 1998. At trial, the prosecution presented evidence showing the following:

FILED 12-13-00
E. DOSAL, CLERK

Petitioner was a biology teacher at a suburban school in the Twin Cities area. The victim was one of his students, a girl who was fifteen years old when the crime occurred. During the latter part of 1997, Petitioner and the victim developed a personal relationship. They met outside of the classroom and talked about matters not directly related to the victim's schoolwork. Eventually, Petitioner and the victim developed a romantic relationship, and they started talking about having a sexual relationship.

In January 1998, Petitioner and the victim devised a plan that would allow them to get together at Petitioner's home for a sexual encounter. Petitioner forged a note, which appeared to have been written and signed by the victim's father, asking that the victim be excused from school on the morning of January 23, 1998, for an orthodontist's appointment. When that date arrived, Petitioner took a day of sick leave, and the victim used the forged note to get out of school. They met at a Dairy Queen, and Petitioner took the victim to his home. When they got there, they engaged in sexual intercourse on the couch in Petitioner's living room.

Soon thereafter, the victim's mother read some passages in the victim's diary that led her to believe that the victim might be involved in a sexual relationship with Petitioner. The mother called the police, and the police then interviewed the victim. At first, the victim was reluctant to talk to the police about what she had done with Petitioner, but eventually she told them all about it. Later, the police gave the victim a hidden microphone, and encouraged her to elicit self-incriminating comments from Petitioner. While the victim was wearing the microphone, Petitioner told the victim that they would be in trouble if she had told any friends about their sexual encounter. He also reassured the victim that the

condom he had used had not failed, that she could not have become pregnant, and that she should not worry about whether his wife would find out about what they had done.

Petitioner was subsequently arrested and charged with two counts of criminal sexual conduct. He was tried before a jury and found guilty on both counts. He was later sentenced to 86 months in state prison.

Petitioner's attorneys filed a direct appeal on Petitioner's behalf, which raised the following claims: (1) that the trial court erred by allowing the prosecution to present evidence showing that Petitioner fled from the police when they tried to take him into custody for violating the terms of his bail; (2) that the trial court erred by allowing the prosecution to present certain documentary evidence that should have been inadmissible under Minnesota's hearsay laws; and (3) that the trial court erred by allowing the prosecution to elicit testimony from Petitioner's wife. Petitioner also filed his own pro se brief that raised three additional claims: (1) that he was deprived of his constitutional right to have effective assistance of legal counsel, because his trial attorney did not adequately investigate the facts of the case; (2) that he was denied due process because the police "coerced" the victim into making incriminating statements; and (3) that he was denied due process because the evidence introduced at trial did not adequately prove that he had committed all of the essential elements of first degree criminal sexual conduct as defined by Minnesota law.

The Court of Appeals addressed and rejected all of the arguments raised by Petitioner's attorney and by Petitioner himself, and Petitioner's convictions and sentence were therefore affirmed. State v. Pannier, No. C9-98-2283 (Minn.App. 1999), 1999 WL

1216327 (unpublished opinion). On February 23, 2000, the Minnesota Supreme Court denied Petitioner's request for further review.

On April 17, 2000, Petitioner filed his present application for federal habeas corpus relief under 28 U.S.C. § 2254. The instant petition lists three claims for relief – the same three that Petitioner raised in his own pro se brief filed with the Minnesota Court of Appeals, i.e., (1) ineffective assistance of counsel, (2) witness coercion, and (3) insufficiency of the evidence to support his conviction for first degree criminal sexual conduct. For the reasons discussed below, the Court concludes that Petitioner is not entitled to relief on any of those claims.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus petitions filed by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal

district courts. The Court pointed out that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a conclusion opposite to ours."

Id. at 1519 (emphasis added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Id. at 1523.

The Court further explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 1521-22 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that are not reasonably supported by the evidentiary record. When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations

are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Accordingly, this Court is not free to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

## III. DISCUSSION

### A. Ineffective Assistance Of Counsel

Petitioner initially contends that his convictions should be vacated because he received ineffective legal assistance from his trial counsel. He claims that he gave his attorney a list that identified more than 100 individuals who could aid his defense, but his attorney never contacted any of those people. Petitioner also claims that his wife tried to give the attorney a letter that allegedly would have been helpful to the defense, but the attorney was never available to receive the letter.

The only state court discussion of Petitioner's ineffective assistance of counsel claim appears in the Minnesota Court of Appeals' decision on his direct appeal. Citing Strickland v. Washington, 466 U.S. 668 (1984), the Court of Appeals correctly ruled that a prisoner who claims ineffective assistance of counsel must show that (1) "counsel's behavior fell below an objective standard of reasonableness; and (2) a reasonable probability exists that absent counsel's unreasonable behavior the outcome [of the trial] would have been different." Pannier, 1999 WL 1216327 at *5, citing Scruggs v. State, 484

N.W.2d 21, 25 (Minn. 1992) and Strickland, supra.

The state court's citation to Strickland clearly demonstrates that the proper legal standard was applied to Petitioner's ineffective assistance claims. Furthermore, Petitioner has not cited any U.S. Supreme Court decision involving facts that are "materially indistinguishable" from the facts of record here, in which an ineffective assistance claim was upheld. Thus, it cannot be said that the state court decision on Petitioner's ineffective assistance claim is "contrary to" established federal law for purposes of § 2254(d)(1). See Williams, 120 S.Ct. at 1520 (when a state court applies a Strickland analysis to an ineffective assistance claim, the court has acted in accordance with -- not contrary to -- established federal law); see also id. at 1525 (Rehnquist, C.J., concurring in part and dissenting in part) ("[g]enerally, in an ineffective-assistance-of-counsel case where the state court applies Strickland, federal habeas courts can proceed directly to 'unreasonable application' review").

Petitioner has also failed to show that the State Court of Appeals' decision in his case involves either (i) an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," or (ii) an "unreasonable application of clearly established Federal law" to the facts of the case. 28 U.S.C. § 2254(d)(1) and (2). The Court of Appeals could not have committed either of those two errors, because Petitioner did not present any facts to that court (or any other court) to consider. Petitioner's ineffective assistance claim is fundamentally flawed because he has offered no evidence to support it. Both here and in his state court appeal, Petitioner has offered only the conclusory assertion that his attorney did not adequately investigate the case.

Petitioner claims that he gave his attorney the names of more than 100 people who could support his defense, but he has not identified a single one of those individuals in his present petition. More importantly, he has not indicated what any of those individuals might have told his attorney or how their statements would have supported his defense. Petitioner's ineffective assistance claim is based on nothing more than his own speculation that if his attorney had contacted the people on the 100-name list, he might have found someone who would have testified that Petitioner "was just trying help the alleged victim." ("Appellant's Pro Se Supplemental Brief," p. 7; [Docket No. 6; A-55] ) Even if Petitioner had furnished affidavits demonstrating that there actually were witnesses who would have offered such testimony, (which, of course, Petitioner has not done), there still would be no reason to think that such testimony would have provided any material aid to his defense.

In fact, it appears that the victim herself probably would have been the first to admit that Petitioner had tried to help her through some problems. Any additional testimony about how Petitioner tried to help the victim probably would have done more harm than good, because it would have demonstrated the victim's vulnerability, and her reliance on Petitioner's counsel. Thus, Petitioner has not demonstrated that his attorney acted incompetently by not contacting the individuals named on the alleged witness list, nor has he demonstrated that the outcome of his trial probably would have been different if those individuals had been contacted. See Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir.) ("nothing could encourage a proliferation of ineffectiveness of counsel claims more than to permit an accused to establish the prejudice prong of Strickland on a showing of nothing more than speculation that he had been prejudiced by his counsel's performance"), cert.

denied, 493 U.S. 898 (1989).

Petitioner has also criticized his attorney for not investigating a letter that his wife allegedly attempted to deliver. However, Petitioner has not described the content of that letter, and he has not explained why the letter supposedly would have affected the outcome of his trial. Thus, with respect to this undelivered letter claim, Petitioner has again failed to demonstrate that his attorney was incompetent, or that he probably would have been acquitted if his attorney had acted differently.

Because Petitioner provided only conclusory assertions to the state courts, unsupported by any specific relevant evidence, those courts could not have made any unreasonable factual determinations pertaining to Petitioner's ineffective assistance of counsel claims. For the same reason, the state courts could not have made an objectively unreasonable application of the relevant law to the facts of the case. Therefore, Petitioner cannot be granted habeas corpus relief on his ineffective assistance of counsel claim pursuant to either the "unreasonable determination of the facts" clause in § 2254(d)(2), or the "unreasonable application of clearly established Federal law" clause in § 2254(d)(1).

B. Witness Coercion Claim

In his second claim for relief, Petitioner argues that the police violated his right to due process by using improper interrogation tactics that "coerced" the victim into giving incriminating evidence. Although Petitioner raised this claim in his direct appeal, the Court of Appeals refused to address it on the merits, because Petitioner had never raised the claim at the trial court level. Citing Minnesota case law, (Roby v. State, 547 N.W.2d 354, 357 (Minn. 1996)), the Court of Appeals reaffirmed its longstanding rule that "[t]his court

will generally not consider matters not argued and considered in the court below." Pannier, 1999 WL 1216327 at * 6. The Court concluded that "[b]ecause [Petitioner] failed to raise this claim [i.e., the witness coercion claim] at trial, he has waived the right to raise it on appeal." Id. Because the State Court of Appeals disposed of Petitioner's witness coercion claim on procedural grounds, rather than on the merits, the claim cannot be considered in federal court. Federal habeas review is precluded because the claim has been procedurally defaulted.

It is well-settled that federal courts normally will not entertain a claim for habeas corpus relief that has not been properly raised in the state's highest available court. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1732 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"). A claim is not properly raised in the state's appellate courts, unless it is raised in procedurally correct manner. Kennedy v. Delo; 959 F.2d 112, 115 (8th Cir.), cert. denied, 506 U.S. 857 (1992).

A claim that has not been properly raised in the state courts is merely "unexhausted," and will cause a habeas petition to be dismissed without prejudice, if there remains a possibility that the state's highest available court might still address the claim on the merits in some future proceeding. Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996); Snell v. Lockhart, 14 F.3d 1289, 1296 (8th Cir.), cert. denied, 513 U.S. 960 (1994). However, if the state's procedural rules preclude the possibility of raising the claim in any future state court proceeding, then the claim has been

procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Kennedy, supra. "Federal courts will not review a procedurally defaulted claim because 'a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.'" Jones v. Jerrison, 20 F.3d 849, 853 (8th Cir. 1994), quoting Coleman, 501 U.S. at 732.

Although federal courts are generally barred from entertaining procedurally defaulted claims, such claims can be addressed if the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman, 501 U.S. at 750. As summarized by the Supreme Court in Coleman:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice".

Id.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996) (emphasis added), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995).

> "The actual innocence exception is concerned with claims of actual, not legal innocence. Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994). It is evidence of factual innocence coupled with a constitutional violation which

> triggers the actual innocence exception. Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [Schlup, 513 U.S. at 324.] Examples of evidence which may establish factual innocence include credible declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, see Schlup, 513 [at 324]... and exculpatory scientific evidence."

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996) (emphasis added). For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999), quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 118 S.Ct. 1807 (1998).

Again, the Minnesota Court of Appeals refused to consider Petitioner's witness coercion claim on the merits, ruling that the claim was procedurally barred because it had not been raised at the trial court level. By failing to preserve the claim at the trial court level, so that it could properly be considered on appeal, Petitioner effectively deprived the state appellate courts of an opportunity to review the claim. It is therefore clear that Petitioner's second ground for relief -- i.e., that he was denied due process because the police coerced the victim -- has been procedurally defaulted.

The only remaining issue to be considered is whether Petitioner has shown cause and prejudice, or proof of his actual innocence, so that his procedural default can be excused. The only suggested "cause" for Petitioner's default appears in his "Traverse." (Docket No. 8.) There he argues that his witness coercion claim was waived at the trial court level, (and was thereby procedurally defaulted), due to ineffective assistance of

counsel.

Ineffective assistance can be a "cause" that will overcome a procedural default, but only if the ineffective assistance claim itself has been preserved by being raised in the state courts. In other words, "'a claim of ineffective assistance'... generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" Edwards v. Carpenter, 120 S.Ct. 1587, 1591 (2000), quoting Murray v. Carrier, 477 U.S. 478, 489 (1986). In this case, Petitioner never argued in the state courts that he received ineffective assistance of counsel because his attorney did not press the "coerced witness" claim. Therefore, Petitioner's ineffective assistance argument cannot satisfy the cause requirement, and it will not excuse his procedural default. Because Petitioner has failed to meet the "cause" requirement, the prejudice requirement need not be considered. Sherron v. Norris, 69 F.3d 285, 289 (8th Cir. 1995).

Petitioner does not qualify for the "actual innocence" exception because he has not cited any new evidence that could affirmatively prove his actual innocence. Thus, the Court concludes that Petitioner's procedural default with respect to his coerced witness claim cannot be excused.[1]

---

[1] Even if Petitioner's coerced witness claim could be considered on the merits, it seems certain that he could not prevail on that claim. Petitioner had an unhampered opportunity to cross-examine the allegedly coerced witness -- i.e., the victim -- at his trial. If he believed that the victim's testimony was the false product of coercion, he could have pursued that theory during the course of the victim's cross-examination. There is no reason to believe, however, that Petitioner could have had any success with that theory, because there is no reason to believe that the victim's testimony was untruthful. Although the victim was understandably reticent at the outset of her interview with the police, Petitioner has offered no good reason to doubt the credibility of the story that she ultimately related to the police – and to the jury. Thus, his "coerced witness" claim appears to be extremely weak.

C. Insufficiency Of The Evidence

In order to find Petitioner guilty of first degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(b), (the statute under which Petitioner was charged), the jury had to find that he used his position of authority to cause the victim to submit to his sexual advances.[2] In his third claim for relief, Petitioner contends that the jurors must have

---

[2] The Minnesota Court of Appeals indicated that the use of a position of authority was not an essential element of Petitioner's alleged offense. The Court of Appeals' opinion in Petitioner's case says the following:

> "[Petitioner] argues that in order to be guilty of criminal sexual conduct in the first-degree he had to use his position of authority as a teacher to get [the victim] to submit to having sex with him. [Petitioner]'s interpretation of the statute is incorrect. Being a person in a position of authority is a requirement for falling within the statute. There is no indication from the language of the statute nor from the caselaw that the position of authority must then be used to force the minor to have sex."

Pannier, 1999 WL 1216327 at *7 (emphasis added).

While it is not the role of the federal court to interpret state statutes, it appears to this Court that the sentence in the Court of Appeals' decision that is highlighted above is not correct. The current version of Minn.Stat. 609.342, subd. 1(b) does not include use of a position of authority as an element of the offense. However, the version of the statute that was in effect when Petitioner committed his crime did include such an element. The older version of the statute, under which Petitioner was convicted, read as follows:

> "A person who engages in sexual penetration with another person, or in sexual contact with a person under 13 years of age... is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists:... (b) the complainant is at least 13 years of age but less than 16 years of age and the actor is more than 48 months older than the complainant and in a position of authority over the complainant, and uses this authority to cause the complainant to submit." (Emphasis added.)

The highlighted language from the old version of the statute was deleted by a 1998 amendment to the statute, which was enacted by Chapter 367, Article 3, Section 7 of the Laws of Minnesota for 1998. Furthermore, the same amendment further provides (at Section 16) that the change to § 609.342, subd. 1(b) is "effective August 1, 1998, and

considered matters other than the evidence introduced at his trial to find that he had used his position of authority to cause his victim to have sex with him. In effect, Petitioner is claiming that there was insufficient evidence of record to support the jury's determination that he had committed each element of the offense of first degree criminal sexual conduct as defined by Minnesota law, including the "use of position of authority" element.

The standard of review for this claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in the original). Under this standard, the Court does not consider whether the evidence could have resulted in acquittal; nor does the Court re-weigh the evidence to see whether it agrees with the jury's assessment of the evidence.

---

appl[ies] to crimes committed on or after that date." Because Petitioner's crime was committed on January 23, 1998, it appears that the old law was applicable to his offense. Therefore, notwithstanding the Court of Appeals' opinion to the contrary, this Court believes that use of a position of authority was indeed an essential element of the crime for which Petitioner was prosecuted.

This Court's disagreement with the State Court of Appeals on the essential elements of Petitioner's crime would be far more significant if the trial court had followed the statutory interpretation that was later voiced by the Court of Appeals. However, the trial court clearly understood that the use of a position of authority was an element of the charged offense. This is evident from the jury instructions provided by the trial court. The jury was specifically instructed that one of the elements of the charged offense was that "defendant was in a position of authority over [the victim] and used this authority to cause [the victim] to submit." (Trial transcript, [Docket No. 7], p. 790 [emphasis added].) Thus, the jurors were properly instructed that they could find Petitioner guilty of first degree criminal sexual conduct only if they found that he used his position of authority to cause submission. The jury presumably followed that instruction, (see Greer v. Miller, 483 U.S. 756, 766, n. 8 (1987)), and therefore the jury presumably would not have found petitioner guilty of first degree criminal sexual conduct, without first finding that he had indeed used his position of authority to cause submission.

Rather, the Court examines the record to see whether any rational trier of fact could have found the defendant guilty based on the evidence presented at trial. If conflicting inferences could be drawn from the evidence, then the Court must assume that the trier of fact resolved those conflicts in favor of the prosecution, and the Court must "defer to that resolution." Id. at 326.

As explained by our Court of Appeals:

> "This court must view the evidence in the light most favorable to the government and sustain the verdict if it is supported by substantial evidence... [T] he government must be given the benefit of all inferences that may logically be drawn from the evidence. It is not necessary that the evidence exclude every reasonable hypothesis except guilt instead, the evidence is simply sufficient if it will convince a trier of fact beyond a reasonable doubt that the defendant is guilty. This court will not disturb a conviction if the evidence rationally supports two conflicting hypotheses. Each of the elements of the crime charged may be proven by circumstantial evidence, as well as by direct evidence. And finally, this court must keep in mind that the standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly."

Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996).

In this case, a rational trier of fact easily could have found that Petitioner used his position of authority -- namely his position as the victim's biology teacher -- to cause her to submit to his sexual advances. The evidence shows that Petitioner first used his position as the victim's teacher to initiate and develop a personal relationship with her. He continued to use his position as a teacher to gain the victim's trust. He encouraged her mistaken belief that their relationship was appropriate, by commingling his role as teacher, confidant and lover, all within the school environment. He gave her passes so she could come and visit him when she was supposed to be in a study hall. And finally, he gave her

a forged note so that she could be excused from class to have sex with him. That last act, by itself, could easily lead a rational juror to conclude that Petitioner used his position of authority to have sex with the victim.

In sum, the Court finds that there is ample evidence in the record to support the jury's determination that Petitioner used his position of authority to cause the victim to submit to his desire for sex. Petitioner's insufficiency of the evidence claim must therefore be denied.

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Petitioner's application for a writ of habeas corpus, (Docket No. 1), be **DENIED**;

and

2. This action be **DISMISSED WITH PREJUDICE**.

DATED: ~~November~~ December 12, 2000

Franklin L. Noel

FRANKLIN L. NOEL
Chief Magistrate Judge

Under D.Minn. L. 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by Dec 29, 2000, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Court of Appeals.